08-18-00064-CR

ACCEPTED
08-18-00064-CR
EIGHTH COURT OF APPEALS
EL PASO, TEXAS
5/29/2018 4:01 PM
DENISE PACHECO
CLERK

NO. 08-18-00064-CR

**IN THE**
**COURT OF APPEALS**
**EIGHTH DISTRICT OF TEXAS**

FILED IN
8th COURT OF APPEALS
EL PASO, TEXAS

5/29/2018 4:01:16 PM

DENISE PACHECO
Clerk

**EX PARTE JESUS AGUILAR**                                        **APPELLEE**

## THE STATE'S BRIEF

**ON APPEAL FROM CAUSE NUMBER 970D04229-243-2**
**IN THE 243RD DISTRICT COURT OF EL PASO COUNTY, TEXAS**

**JAIME ESPARZA**
**DISTRICT ATTORNEY**
**34th JUDICIAL DISTRICT**

**RONALD BANERJI**
**ASST. DISTRICT ATTORNEY**
**DISTRICT ATTORNEY'S OFFICE**
**EL PASO COUNTY COURTHOUSE**
**500 E. SAN ANTONIO**
**EL PASO, TEXAS 79901**
**(915) 546-2059 ext. 3312**
**FAX (915) 533-5520**
**E-MAIL: rbanerji@epcounty.com**
**SBN 24076257**

**ATTORNEYS FOR THE STATE**

**The State does not request oral argument.**

## IDENTITY OF PARTIES AND COUNSEL

**APPELLANT**: The State of Texas, 34th Judicial District Attorney's Office, represented in the writ-of-habeas-corpus hearing by:

Jaime Esparza, District Attorney
Ronald Banerji, Assistant District Attorney
500 E. San Antonio, Suite 201
El Paso, Texas 79901
(915) 546-2059

and on appeal by:

Jaime Esparza, District Attorney
Ronald Banerji, Assistant District Attorney
500 E. San Antonio, Suite 201
El Paso, Texas 79901
(915) 546-2059

**APPELLEE**: Jesus Aguilar, represented in the writ-of-habeas-corpus hearing and on appeal by:

Matthew DeKoatz
718 Myrtle Ave.
El Paso, Texas 79901-2542
(915) 626-8833

**TRIAL COURT**: 243rd District Court, Judge Luis Aguilar, presiding

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL .........................................................ii

INDEX OF AUTHORITIES .........................................................................v-viii

STATEMENT OF THE CASE.......................................................................ix-x

POINTS OF ERROR PRESENTED.....................................................................xi

STATEMENT OF FACTS................................................................................1-3

SUMMARY OF THE STATE'S ARGUMENTS ...............................................4-6

**STATE'S POINTS OF ERROR PRESENTED FOR REVIEW:** .....................7-42

    **Point of Error One: Because Aguilar failed to overcome the subsequent-writ bar, the habeas court abused its discretion in granting Aguilar habeas-corpus relief.**...........................................................................................7-10

    **Point of Error Two: Aguilar's habeas claim that Texas' deferred-adjudication community-supervision statute violates due process and is unconstitutional is not cognizable, as this claim could have been raised in a direct appeal, such that he is foreclosed from bringing his claim by application for writ of habeas corpus, and thus, the habeas court abused its discretion to the extent that it granted Aguilar habeas-corpus relief on this basis.**...........................................................................................11-12

    **Point of Error Three: Aguilar failed his burden of proving his habeas claim that Texas' deferred-adjudication community-supervision statute is unconstitutional, and thus, the habeas court abused its discretion to the extent that it granted Aguilar habeas-corpus relief on this basis.**...........................13-17

**Point of Error Four:** Aguilar failed his burden of proving his claim that his trial counsel rendered ineffective assistance of counsel by allegedly not informing him that deferred-adjudication community-supervision status was considered a conviction under Federal law and that this alleged conviction would have an enhancing effect on any potential Federal criminal sentences because trial counsel was not required to advise him of such collateral consequences of his guilty plea, and thus, the habeas court abused its discretion to the extent that it granted Aguilar habeas-corpus relief on this basis.............................................................................................18-31

**Point of Error Five:** Aguilar failed his burden of proving his habeas claim that his trial counsel rendered ineffective assistance of counsel by allegedly failing to adequately inform him of the immigration consequences of his guilty plea because trial counsel was not required to advise him of such collateral consequences at the time of his plea, and thus, the habeas court abused its discretion to the extent that it granted Aguilar habeas-corpus relief on this basis............................................................................................32-42

PRAYER...............................................................................................43

SIGNATURES.......................................................................................43

CERTIFICATE OF COMPLIANCE.....................................................44

CERTIFICATE OF SERVICE..............................................................44

# INDEX OF AUTHORITIES

**FEDERAL CASES**

*Chaidez v. United States*, 568 U.S. 342, 133 S. Ct. 1103,
185 L. Ed. 2d 149 (2013)......................................................................33

*Hill v. Lockhart*, 474 U.S. 52, 106 S.Ct. 366,
88 L.Ed.2d 203 (1985)..............................................................21, 28, 38-39

*Padilla v. Kentucky*, 559 U.S. 356, 130 S.Ct. 1473,
176 L.Ed.2d 284 (2010)................................................22, 28, 33, 35, 38

*Roe v. Flores-Ortega*, 528 U.S. 470, 120 S.Ct. 1029,
145 L.Ed.2d 985 (2000)......................................................................28, 38

*Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052,
80 L.Ed.2d 674 (1984)..............................................................20-22, 28, 39

**STATE CASES**

*Candelas v. State*, 91 S.W.3d 810 (Tex.App.–El Paso 2002, no pet.) ....................17

*Coleman v. State*, 632 S.W.2d 616 (Tex.Crim.App. 1982)......................................16

*Crawford v. State*, 155 S.W.3d 612
(Tex.App.–San Antonio 2004, pet. ref'd).......................................................24-25

*Ex parte Aguilar*, No. 08-14-00204-CR, 2016 WL 921904
(Tex.App.–El Paso Mar. 9, 2016, pet. ref'd)
(not designated for publication)...............................x, 2, 8, 10, 24-26, 30, 32-33, 41

*Ex parte Aguilar*, No. 08-12-00369-CR, 2014 WL 7234592
(Tex.App.–El Paso Dec. 19, 2014, no pet.)
(not designated for publication) ...................................................................19-22

*Ex parte Beck*, 541 S.W.3d 846 (Tex.Crim.App. 2017)..........................................12

*Ex parte Brown*, 158 S.W.3d 449 (Tex.Crim.App. 2005)......................................19

*Ex parte Cisneros*, No. 08-11-00180-CR, 2013 WL 1281995
(Tex.App.–El Paso Mar. 28, 2013, no pet.)
(not designated for publication)..................................................................34-35

*Ex parte De Los Reyes*, 392 S.W.3d 675 (Tex.Crim.App. 2013)...................34-35, 39

*Ex parte Drinkard*, No. 02-11-00369-CR, 2012 WL 3207428,
(Tex.App.–Fort Worth Aug. 9, 2012, no pet.)
(mem.op., not designated for publication).............................................................25

*Ex parte Harrington*, 310 S.W.3d 452 (Tex.Crim.App. 2010).........................20, 38

*Ex parte Morrow*, 952 S.W.2d 530 (Tex.Crim.App. 1997).....................................24

*Ex parte Murillo*, 389 S.W.3d 922
(Tex.App.–Houston [14th Dist.] 2013, no pet.) ...............................28-29, 31, 39, 42

*Ex parte Nelson*, 137 S.W.3d 666, (Tex.Crim.App. 2004) ....................................12

*Ex parte Nieves*, No. 08-11-00189-CR, 2013 WL 3943288
(Tex.App.–El Paso July 24, 2013, no pet.)
(not designated for publication)..................................................................34-35

*Ex parte Okere*, 56 S.W.3d 846 (Tex.App.–Fort Worth 2001, pet. ref'd) ..........26, 37

*Ex parte Salazar*, 510 S.W.3d 619 (Tex.App.–El Paso 2016, pet. ref'd)................7-9

*Ex parte Sanders*, No. 08-05-00074-CR, 2006 WL 3754790
(Tex.App.–El Paso Dec. 14, 2006, pet. ref'd)(not designated for publication)..........12

*Ex parte Torres,* 483 S.W.3d 35 (Tex.Crim.App. 2016)...................28, 31, 38-39, 42

*Ex parte Torres*, No. 08-10-00330-CR, 2012 WL 1431660
(Tex.App.–El Paso April 25, 2012, no pet.)(not designated for publication) .............19

*Ex parte Wheeler*, 203 S.W.3d 317 (Tex.Crim.App. 2006) ....................................19

*Ex parte Wong*, No. 08-08-00003-CR, 2009 WL 3111827
(Tex.App.–El Paso, Sept. 30, 2009, no pet.)
(not designated for publication).................................................................26, 37

*Ex parte Young*, No. 08-04-00250-CR, 2008 WL 2967008
(Tex.App.–El Paso July 31, 2008, pet. ref'd)
(not designated for publication).................................................................10, 32

*Garcia v. State*, 57 S.W.3d 436, (Tex.Crim.App. 2001).......................................22

*Gillenwaters v. State*, 205 S.W.3d 534 (Tex.Crim.App. 2006) ..............................14

*Goodspeed v. State*, 187 S.W.3d 390 (Tex.Crim.App. 2005)............................22, 36

*Guzman v. State*, 955 S.W.2d 85 (Tex.Crim.App. 1997)..................................19-20

*Hernandez v. State*, 726 S.W.2d 53 (Tex.Crim.App. 1986)..................................20

*Jackson v. State*, 973 S.W.2d 954 (Tex.Crim.App. 1998)..................................20-21

*Jackson v. State*, 877 S.W.2d 768 (Tex.Crim.App. 1994)......................................21

*Karenev v. State*, 281 S.W.3d 428 (Tex.Crim.App. 2009).....................................14

*Kniatt v. State*, 206 S.W.3d. 657 (Tex.Crim.App. 2006).......................................19

*McFarland v. State*, 845 S.W.2d 824 (Tex.Crim.App. 1992) .................................21

*McNew v. State*, 608 S.W.2d 166 (Tex.Crim.App. 1978)......................................16

*Merchant v. State*, No. 08-00-00183-CR, 2001 WL 842087
(Tex.App.–El Paso July 26, 2001, no pet.)(not designated for publication)...............16

*Perez v. State*, 310 S.W.3d 890 (Tex.Crim.App. 2010)........................................21

*Rylander v. State*, 101 S.W.3d 107 (Tex.Crim.App. 2003)..........................27, 36-37

*Salinas v. State*, 464 S.W.3d 363 (Tex.Crim.App. 2015)......................................14

*Sandoval v. State*, Nos. 14-01-00049-CR, 14-01-00050-CR, 14-01-00051-CR, 2002 WL 533711 (Tex.App.–Houston [14th Dist.] Apr. 11, 2002, pet. ref'd) (not designated for publication)...............................................................................36

*Santikos v. State*, 836 S.W.2d 631 (Tex.Crim.App. 1992)(op. on reh'g), *cert. denied*, 506 U.S. 999, 113 S.Ct. 600, 121 L.Ed.2d 537 (1992) ......................14

*Singhal v. State*, No. 2-06-221-CR, 2007 WL 866526 (Tex.App.–Fort Worth Mar. 22, 2007, pet. ref'd)(mem.op., not designated for publication) ..............................16

*State v. Guerrero*, 400 S.W.3d 576 (Tex.Crim.App. 2013)................................34-35

*State v. Jimenez*, 987 S.W.2d 886 (Tex.Crim.App. 1999)......................................25

*Thompson v. State*, 9 S.W.3d 808 (Tex.Crim.App. 1999)............................21-23, 35

## STATE STATUTES

TEX. CRIM. PROC. CODE Art. 11.072................................................................7-8

TEX. CRIM. PROC. CODE Art. 42A, subchapter C...................................................16

TEX. CRIM. PROC. CODE Art. 42.12.........................................................16, 31, 41

TEX. CRIM. PROC. CODE Art. 44.02 (1999).........................................................11

TEX. PENAL CODE § 12.35.................................................................30-31, 41

TEX. PEN. CODE §12.44 .............................................................................ix

## RULES

TEX. R. APP. P. 25.2 ...................................................................................11

## STATEMENT OF THE CASE

Appellee, Jesus Aguilar, was indicted for the state-jail-felony offense of possession of a controlled substance in penalty group 1, to wit: cocaine, weighing less than 1 gram, alleged to have occurred on or about May 3, 1997. (CR: 7).[1] On January 15, 1999, pursuant to a plea agreement, the charge was reduced to a class-A misdemeanor, *see* TEX. PEN. CODE §12.44(b), and Aguilar pleaded guilty. (CR: 26-33). In accordance with the plea agreement, the trial court deferred entry of a judgment of conviction and placed Aguilar on two-years' community supervision. (CR: 39-40). Aguilar did not appeal. On February 25, 2000, the trial court granted Aguilar's request for early termination of his community supervision. (CR: 53).

On May 28, 2014, Aguilar filed his initial application for writ of habeas corpus pursuant to article 11.072 of the Texas Code of Criminal Procedure, alleging that his trial counsel rendered ineffective assistance by failing to inform him that his guilty plea would result in his deportation and failing to pursue a motion to suppress the cocaine that formed the basis for his guilty plea. (CR: 54-

---

[1] Throughout this brief, references to the record will be made as follows: references to the clerk's record will be made as "CR" and page number, references to the reporter's record will be made as "RR" and page number, and references to exhibits will be made as either "SX" or "PE" (petitioner's exhibit) and exhibit number.

65).

At the conclusion of an evidentiary hearing on July 1, 2014, the habeas court granted Aguilar's writ application, vacated his "conviction," and ordered the case set for a new trial. (CR: 125). The habeas court also set a hearing date for a motion to suppress evidence. (CR: 10). The State timely appealed, and this Court reversed the habeas court and rendered judgment denying Aguilar's application for writ of habeas corpus. *See Ex parte Aguilar*, No. 08-14-00204-CR, 2016 WL 921904, at *6 (Tex.App.–El Paso Mar. 9, 2016, pet. ref'd)(not designated for publication).

On October 30, 2017, Aguilar filed a subsequent application for writ of habeas corpus pursuant to article 11.072 of the Texas Code of Criminal Procedure, alleging, in part, that Texas' deferred-adjudication community-supervision statute is unconstitutional. (CR: 145-60). The State timely filed its answer on November 21, 2017. (CR: 165-200). Holding a hearing on March 22, 2018, the habeas court orally granted Aguilar's writ application, signed an order granting relief on March 28, 2018, and filed the order on March 29, 2018. (CR: 201). The State timely filed its notice of appeal on April 17, 2018. (CR: 205-6).

## STATE'S POINTS OF ERROR PRESENTED FOR REVIEW

**Point of Error One:**
**Because Aguilar failed to overcome the subsequent-writ bar, the habeas court abused its discretion in granting Aguilar habeas-corpus relief.**

**Point of Error Two:**
**Aguilar's habeas claim that Texas' deferred-adjudication community-supervision statute violates due process and is unconstitutional is not cognizable, as this claim could have been raised in a direct appeal, such that he is foreclosed from bringing his claim by application for writ of habeas corpus, and thus, the habeas court abused its discretion to the extent that it granted Aguilar habeas-corpus relief on this basis.**

**Point of Error Three:**
**Aguilar failed his burden of proving his habeas claim that Texas' deferred-adjudication community-supervision statute is unconstitutional, and thus, the habeas court abused its discretion to the extent that it granted Aguilar habeas-corpus relief on this basis.**

**Point of Error Four:**
**Aguilar failed his burden of proving his claim that his trial counsel rendered ineffective assistance of counsel by allegedly not informing him that deferred-adjudication community-supervision status was considered a conviction under Federal law and that this alleged conviction would have an enhancing effect on any potential Federal criminal sentences because trial counsel was not required to advise him of such collateral consequences of his guilty plea, and thus, the habeas court abused its discretion to the extent that it granted Aguilar habeas-corpus relief on this basis.**

**Point of Error Five:**
**Aguilar failed his burden of proving his habeas claim that his trial counsel rendered ineffective assistance of counsel by allegedly failing to adequately inform him of the immigration consequences of his guilty plea because trial counsel was not required to advise him of such collateral consequences at the time of his plea, and thus, the habeas court abused its discretion to the extent that it granted Aguilar habeas-corpus relief on this basis.**

## STATEMENT OF FACTS

### The arrest

On May 3, 1997, at approximately 12:40 p.m., Officer José Rodriguez of the Anthony Police Department was on patrol when he observed two persons (Ricardo Marmolejo and Aguilar) sitting at a park bench. (CR: 34-36). Ofc. Rodriguez observed Marmolejo pick up an item from the table and bend down so that Ofc. Rodriguez could not see him place the item in his right-front pants pocket. *Id*. Due to the suspicious behavior, Ofc. Rodriguez stopped his patrol unit and approached the two individuals. *Id*. As he did, he detected a strong odor of marijuana emanating from both individuals. *Id*. When Ofc. Rodriguez asked Marmolejo if he had any narcotics, Marmolejo admitted that he had some marijuana in the front pocket of his pants. *Id*. Ofc. Rodriguez then asked Aguilar for identification, and Aguilar pulled out his wallet. *Id*. As Aguilar did so, Ofc. Rodriguez observed a small diamond-folded piece of white paper fall out of Aguilar's rear pants pocket. *Id*. Ofc. Rodriguez picked up the piece of paper and found that it contained cocaine. *Id*. Aguilar was placed under arrest for possession of cocaine. *Id*.

### The initial writ hearing

The habeas court held a hearing on Aguilar's initial writ application on July 1, 2014, and at the conclusion of the writ hearing, the habeas court granted

1

Aguilar's request for habeas-corpus relief, vacated Aguilar's "conviction," and directed the case be set for a new trial. (CR: 125).

**The State's first appeal**

The State timely appealed and this Court reversed the habeas court and rendered judgment denying Aguilar's application for writ of habeas corpus. *See Ex parte Aguilar*, 2016 WL 921904, at *6.

**The subsequent writ hearing**

The habeas court held a hearing on Aguilar's subsequent writ application on March 22, 2018. (RR: 1). Aguilar testified on his own behalf that he was 42-years old, married for 20 years, and had two children. (RR: 8-9). Aguilar further testified about his immigration case – that he had been ordered deported but was appealing that decision and was out on an immigration bond. (RR: 9). Aguilar further testified that he understood Texas' deferred-adjudication statute to mean that he did not have a conviction because he had successfully completed his term of deferred-adjudication community supervision. (RR: 9-11). Aguilar also testified that he understood that the Federal courts, both district and immigration, considered his deferred-adjudication guilty plea a conviction and that had he known this, he would not have pleaded guilty. (RR: 11). Upon cross-examination, Aguilar admitted that he was not facing any Federal criminal charges and that the

2

information to which he testified in this subsequent writ hearing was the same information he had already provided at his initial habeas hearing in 2014. (RR: 12). No other witnesses testified at the habeas hearing.

During closing argument, the State relied on the arguments it made in its filed answer, *see* (CR: 165-200), and argued that Aguilar should be denied relief because his subsequent writ application did not overcome the subsequent-writ bar. (RR: 13). Specifically, the State argued that Aguilar failed to set forth a new legal basis that did not previously exist at the time of his initial writ application and also failed to set forth a new factual basis that he could not have ascertained through the exercise of reasonable diligence at the time of his initial application. *Id*. Aguilar, in turn, argued that his attack on the constitutionality of Texas' deferred-adjudication statute was a new rule of law, such that he was entitled to relief. *Id*. At the conclusion of the writ hearing, the habeas court granted Aguilar habeas-corpus relief. *Id*.

## SUMMARY OF THE STATE'S ARGUMENTS

**Summary of the State's first point of error:** Aguilar's claims in his subsequent habeas-corpus application are procedurally barred because he failed to present these claims in his initial application for writ of habeas corpus. Specifically, both the factual and legal bases for Aguilar's claims were available and able to be reasonably formulated at the time of his initial application, such that he is now barred from presenting them. As such, the habeas court abused its discretion to the extent that it granted Aguilar habeas-corpus relief on this basis.

**Summary of the State's second point of error:** Aguilar's habeas claim that Texas' deferred-adjudication community-supervision statute violates due process and is unconstitutional is not cognizable in a writ of habeas corpus, as this claim could have been raised in a direct appeal. As such, Aguilar is foreclosed from bringing this claim by application for writ of habeas corpus, and the habeas court abused its discretion to the extent that it granted Aguilar habeas-corpus relief on this basis.

**Summary of the State's third point of error:** Aguilar failed to prove his habeas claim that Texas' deferred-adjudication community-supervision statute is unconstitutional, as appellate courts have routinely and consistently upheld the constitutionality of the deferred-adjudication community-supervision statute.

4

Furthermore, under the duel-sovereignty doctrine, the Federal government, as a separate sovereign, is free to seek redress for infractions of its own laws and can treat Aguilar's state deferred-adjudication guilty plea as a conviction for Federal criminal-law purposes. As such, the habeas court abused its discretion to the extent that it granted Aguilar habeas-corpus relief on this basis.

**<u>Summary of the State's fourth point of error:</u>** Aguilar failed his burden of proving his claim that his trial counsel rendered ineffective assistance of counsel by allegedly not informing him that his deferred-adjudication community-supervision status was considered a conviction under Federal law and that this alleged conviction would have an enhancing effect on any potential Federal criminal sentences because these were collateral consequences of his guilty plea of which trial counsel had no duty to advise, such that trial counsel's performance was not deficient. Furthermore, Aguilar failed his burden of proving that he was prejudiced by trial counsel's alleged failure to advise because his decision to reject the plea offer would not have been rational under the circumstances. As such, the habeas court abused its discretion to the extent that it granted Aguilar habeas-corpus relief on this basis.

**<u>Summary of the State's fifth point of error:</u>** Aguilar failed his burden of proving his claim that his trial counsel rendered ineffective assistance of counsel by

allegedly failing to adequately inform him of the immigration consequences of his guilty plea because at the time he pleaded guilty, trial counsel had no duty to advise him of the immigration consequences, such that trial counsel's performance was not deficient. Furthermore, Aguilar failed his burden of proving that he was prejudiced by trial counsel's alleged failure to advise because his decision to reject the plea offer would not have been rational under the circumstances. As such, the habeas court abused its discretion to the extent that it granted Aguilar habeas-corpus relief on this basis.

## STATE'S POINTS OF ERROR PRESENTED FOR REVIEW

**POINT OF ERROR ONE: Because Aguilar failed to overcome the subsequent-writ bar, the habeas court abused its discretion in granting Aguilar habeas-corpus relief.**

## UNDERLYING FACTS

The State here relies on the recitation of facts set out in the statement of facts above.

## ARGUMENT AND AUTHORITIES

### I. Subsequent-article-11.072-writ-of-habeas-corpus standard

A court may not consider the merits of a subsequent article 11.072 writ of habeas corpus (after final disposition of an initial application) unless the application contains sufficient specific facts establishing that the current claims and issues have not been and could not have been presented previously in an original application because the factual or legal bases for the claims were unavailable on the date the applicant filed the previous application. *See* TEX. CRIM. PROC. CODE Art. 11.072 § 9(a); *Ex parte Salazar*, 510 S.W.3d 619, 625 (Tex.App.–El Paso 2016, pet. ref'd). A legal basis of a claim is unavailable if the legal basis was not recognized by and could not have been reasonably formulated from a final decision of the United States Supreme Court, a court of appeals of the United States, or a Texas appellate court on or before the date the previous

application was filed. TEX. CRIM. PROC. CODE Art. 11.072 § 9(b); *Ex parte Salazar*, 510 S.W.3d at 625. A factual basis of a claim is unavailable if the factual basis was not ascertainable through the exercise of reasonable diligence on or before the date the previous application was filed. TEX. CRIM. PROC. CODE Art. 11.072 § 9(c); *Ex parte Salazar*, 510 S.W.3d at 625. The rejection of an initial habeas-corpus application is the trigger event for the subsequent application's restrictions. *Ex parte Salazar*, 510 S.W.3d at 625.

## II. Aguilar's claims in his subsequent application are procedurally barred because he failed to present any previously unavailable or "new" factual or legal bases for his claims in his subsequent habeas-corpus application.

Aguilar filed his initial writ-of-habeas-corpus application on May 28, 2014, which was ultimately denied by this Court.[2] *See Ex parte Aguilar*, 2016 WL 921904, at *6. Aguilar then filed his subsequent writ-of-habeas-corpus application on October 30, 2017. (CR: 145-60). In his subsequent habeas application, Aguilar failed to allege specific facts establishing that the current claims and issues had not been and could not have been presented previously in his initial application because the factual or legal bases for the claims were unavailable on the date that he filed his initial application. *See* TEX. CRIM. PROC. CODE Art. 11.072; *Ex parte*

---

[2] This Court issued the mandate in *Ex parte Aguilar* on April 27, 2017. *See* (CR: 143).

8

*Salazar*, 510 S.W.3d at 629 (holding that this Court was barred from reviewing the applicant's claims on the merits under article 11.072's abuse-of-writ provisions with respect to ineffective-assistance-of-counsel claims, but not as to actual-innocence claims, because the applicant could have raised his claims in the initial habeas proceeding).

In his subsequent habeas application, Aguilar cited to article 11.072, section 9, and then simply asserted that the issue was one of first impression and, as such, was cognizable. *See* (CR: 154). However, Aguilar failed to show why he did not present his claims in his initial habeas application, as these claims could have been reasonably formulated at that time. As such, Aguilar was barred from bringing claims in a subsequent habeas application that he could have brought in his initial application, even if he formulated them on a later date, and he cannot rely on equitable principles to save his application. *See Ex parte Salazar*, 510 S.W.3d at 629 (explaining that Texas state courts have no authority to bypass the abuse-of-writ provision on equitable grounds). Simply stated, Aguilar failed to present any previously unavailable factual or legal bases for his claims. As such, the habeas court was prohibited from considering, and granting relief on, the merits of his claims, as he failed to present these claims in his initial habeas proceeding. *Id*.

9

Furthermore, in his initial habeas application, Aguilar alleged that trial counsel rendered ineffective assistance of counsel by failing to inform him that his guilty plea would result in his deportation. *See* (CR: 148). In *Ex parte Aguilar*, this Court decided this issue against him. *See Ex parte Aguilar*, 2016 WL 921904, at *6. As such, Aguilar is foreclosed from relitigating this issue, as it has already been adjudicated. *See Ex parte Young*, No. 08-04-00250-CR, 2008 WL 2967008, at *2 (Tex.App.–El Paso July 31, 2008, pet. ref'd)(not designated for publication)(under the law-of-the-case doctrine, an appellate court's resolution of a question of law in a previous appeal of the same case will govern the disposition of the same issue when raised in a subsequent appeal). For these reasons alone, the habeas court's order granting Aguilar habeas relief and setting aside his "conviction" should be reversed.

**POINT OF ERROR TWO: Aguilar's habeas claim that Texas' deferred-adjudication community-supervision statute violates due process and is unconstitutional is not cognizable, as this claim could have been raised in a direct appeal, such that he is foreclosed from bringing his claim by application for writ of habeas corpus, and thus, the habeas court abused its discretion to the extent that it granted Aguilar habeas-corpus relief on this basis.**

## UNDERLYING FACTS

The State here relies on the recitation of facts set out in the statement of facts above.

## ARGUMENT AND AUTHORITIES

Aguilar's claim that Texas' deferred-adjudication community-supervision statute violates due process and is unconstitutional was not cognizable as this claim could have been raised on direct appeal under article 44.02. *See* TEX. CRIM. PROC. CODE Art. 44.02 (1999).[3] [4]

Aguilar pleaded guilty pursuant to a plea agreement on January 15, 1999, *see* (CR: 26-33), and received two years' deferred-adjudication community supervision. *See* (CR: 39-40). Specifically, the plea agreement explained that Aguilar needed to obtain permission from the trial court to appeal if the trial court

---

[3] The 1999 version of article 44.02 states, "A defendant in any criminal action has the right of appeal under the rules hereinafter prescribed." TEX. CRIM. PROC. CODE Art. § 44.02 (1999).

[4] Texas Rule of Appellate Procedure 25.2 gives the defendant in a criminal case the right of appeal. *See* TEX. R. APP. P. 25.2(a)(2).

did not exceed the punishment recommendations. *See* (CR: 26-33). And the record does not show that Aguilar requested permission from the trial court to appeal, nor did he appeal, the constitutionality of the deferred-adjudication community-supervision statute.[5] As such, his writ is not cognizable, as he could have raised these issues on direct appeal but failed to do so. *See Ex parte Beck*, 541 S.W.3d 846, 852 (Tex.Crim.App. 2017)(complaints that could have been raised on direct appeal cannot be raised on post-conviction habeas review); *Ex parte Nelson*, 137 S.W.3d 666, 667 (Tex.Crim.App. 2004)("It is well-settled 'that the writ of habeas corpus should not be used to litigate matters which should have been raised on direct appeal.'"); *see also Ex parte Sanders*, No. 08-05-00074-CR, 2006 WL 3754790, at *1 (Tex.App.–El Paso Dec. 14, 2006, pet. ref'd)(not designated for publication)(holding that when an applicant has an adequate remedy at law by direct appeal as to the constitutionality of a statute, his habeas-constitutionality claim is not cognizable by an application for a writ of habeas corpus). For this reason, the habeas court's order granting Aguilar habeas relief and setting aside Aguilar's "conviction" should be reversed.

---

[5] In fact, Aguilar also failed to raise his argument regarding the constitutionality of Texas' deferred-adjudication community-supervision in the trial court, such that he has forfeited his argument at every level in the proceedings.

**POINT OF ERROR THREE: Aguilar failed his burden of proving his habeas claim that Texas' deferred-adjudication community-supervision statute is unconstitutional, and thus, the habeas court abused its discretion to the extent that it granted Aguilar habeas-corpus relief on this basis.**

## UNDERLYING FACTS

Aguilar argued in his subsequent habeas application that Texas' "deferred adjudication statutes are violative of Due Process and Due Course of Law...," and he directly challenged "the Texas deferred adjudication provisions of Texas law, as further described infra, as being unconstitutional under the Texas Constitution, Due Course of Law Clause; and as being unconstitutional under the 14th Amendment, Due Process of Law Clause." (CR: 146-47).

At his subsequent habeas hearing, Aguilar explained that he was "attacking the Texas deferred adjudication statute, which I don't believe anybody has ever attacked before." (RR: 4). He also argued that Texas' deferred-adjudication statute was a myth because Federal courts and the state of Florida considered Texas deferred adjudications convictions. (RR: 6-7).

## ARGUMENT AND AUTHORITIES

Even if Aguilar's claim that Texas' deferred-adjudication community-supervision statute is unconstitutional is cognizable, which the State does not concede, Aguilar failed his burden of proving that the statute is unconstitutional,

13

and thus, the habeas court abused its discretion to the extent that it granted Aguilar habeas-corpus relief on this basis.

## I. Constitutionality-of-a-statute standard of review

Statutes are presumed to be constitutional until it is determined otherwise. *See Karenev v. State*, 281 S.W.3d 428, 434 (Tex.Crim.App. 2009). To prevail on a facial challenge as to the constitutionality of a statute, a party must establish that the statute always operates unconstitutionally in all possible circumstances. *See Salinas v. State*, 464 S.W.3d 363, 367 (Tex.Crim.App. 2015). Courts are to consider the statute only as it is written, rather than how it operates in practice. *Id*. A facial challenge to a statute is the most difficult challenge to mount successfully because the challenger must establish that no set of circumstances exists under which the statute will be valid. *See Santikos v. State*, 836 S.W.2d 631, 633 (Tex.Crim.App. 1992)(op. on reh'g), *cert. denied*, 506 U.S. 999, 113 S.Ct. 600, 121 L.Ed.2d 537 (1992). In contrast, a claim that a statute is unconstitutional "as applied" asserts that the statute, although generally constitutional, operates unconstitutionally in specific circumstances. *Gillenwaters v. State*, 205 S.W.3d 534, 537 n. 3 (Tex.Crim.App. 2006).

**II. Aguilar failed his burden of proving that Texas' deferred-adjudication statute always operates unconstitutionally in all possible circumstances.**

Because Aguilar did not specify whether Texas' deferred-adjudication statute was unconstitutional on its face or only as applied to him, and because he attacked the statute globally and without reference to any evidence from his underlying plea (in both his subsequent habeas application and at the hearing), he appears to be making a facial challenge to the constitutionality of the statute. However, Aguilar failed to assert, much less prove, how Texas' deferred-adjudication community-supervision statute is unconstitutional in all possible circumstances. Instead, the only evidence Aguilar presented at his subsequent writ hearing was the same evidence he presented at his initial writ hearing, with the testimony that he would not have pleaded guilty had he known that his state deferred-adjudication guilty plea would be considered a conviction by the Federal courts. (RR: 11). As such, Aguilar failed his burden of proving how Texas' deferred-adjudication community-supervision statute was unconstitutional on its face.

Furthermore, appellate courts have repeatedly rejected challenges to the constitutionality of Texas' deferred-adjudication community-supervision statute.[6]

---

[6] At the time of Aguilar's deferred-adjudication plea, the deferred-adjudication statute was embodied under article 42.12, section 5, of the Texas Code of Criminal Procedure, but

15

Instead, the appellate courts have consistently upheld the constitutionality of the deferred-adjudication community-supervision statute in various contexts. *See Coleman v. State*, 632 S.W.2d 616, 618-19 (Tex.Crim.App. 1982)(holding that the deferred-adjudication statute is not unconstitutionally vague); *McNew v. State*, 608 S.W.2d 166, 176 (Tex.Crim.App. 1978)(holding that deferred adjudication is a constitutional form of probation); *Singhal v. State*, No. 2-06-221-CR, 2007 WL 866526, at *2 (Tex.App.–Fort Worth Mar. 22, 2007, pet. ref'd)(mem.op., not designated for publication)(holding that appellant's facial challenge to the constitutionality of Texas' deferred-adjudication statute on the basis that it denied appellant due process failed because he failed to prove how it was unconstitutionally applied to him and thus his facial challenge also failed); *Merchant v. State*, No. 08-00-00183-CR, 2001 WL 842087, at *4 n.18 (Tex.App.–El Paso July 26, 2001, no pet.)(not designated for publication)(recognizing that challenges to the constitutionality of the deferred-adjudication statute have been rejected by several courts of appeals).

Furthermore, Aguilar failed to cite any authority in his subsequent habeas application (and the State has been unable to find any) that supported his claim

---

currently is embodied in chapter 42A, subchapter C, of the Texas Code of Criminal Procedure. *See* TEX. CRIM. PROC. CODE Art. 42.12; TEX. CRIM. PROC. CODE Art. 42A, subchapter C.

16

that the deferred-adjudication community-supervision statute was a misrepresentation that violates due process simply because a separate sovereign, the Federal government, considers Aguilar's deferred-adjudication status a drug "conviction" under Federal law for immigration and enhancement-of-punishment purposes. *See* (CR: 146-48). And, in fact, under the duel-sovereignty doctrine, the Federal government is free to seek redress for infractions of its own laws and can treat Aguilar's Texas deferred-adjudication guilty plea as a conviction for Federal criminal-law purposes if it so wishes. *See Candelas v. State*, 91 S.W.3d 810, 813 (Tex.App.–El Paso 2002, no pet.)(the dual-sovereignty doctrine provides that every state has the authority to seek redress for infractions of its own laws, and prosecution by both State and Federal authorities for the same conduct does not violate the Federal Due Process Clause). As such, the Federal government can view Texas' deferred-adjudication statute as a "conviction" for Federal criminal-law purposes, and the only way for Aguilar to seek redress as to this characterization would be in Federal court. Aguilar thus failed to demonstrate that Texas' deferred-adjudication community-supervision statute was unconstitutional on its face and as applied to him. For these reasons, the habeas court's order granting Aguilar habeas relief and setting aside Aguilar's "conviction" should be reversed.

**POINT OF ERROR FOUR: Aguilar failed his burden of proving his claim that his trial counsel rendered ineffective assistance of counsel by allegedly not informing him that deferred-adjudication community-supervision status was considered a conviction under Federal law and that this alleged conviction would have an enhancing effect on any potential Federal criminal sentences because trial counsel was not required to advise him of such collateral consequences of his guilty plea, and thus, the habeas court abused its discretion to the extent that it granted Aguilar habeas-corpus relief on this basis.**

## UNDERLYING FACTS

The State here relies on the recitation of facts set out in the statement of facts above.

## ARGUMENT AND AUTHORITIES

In his subsequent habeas application, Aguilar asserted that his deferred-adjudication community-supervision status is considered a felony conviction under Federal law and that this was a direct consequence of his deferred-adjudication guilty plea. *See* (CR: 146). He further asserted that he is facing enhanced punishment for any potential Federal crimes he could be convicted of and that had he been informed of these consequences, he would not have pleaded guilty. *See* (CR: 148). Aguilar's claims failed because these were collateral consequences of pleading guilty that trial counsel had no duty of which to advise, and thus, trial counsel was not deficient in his performance for allegedly failing to so advise, nor was Aguilar prejudiced as a result.

18

## I. Standards of review

### A. Writ-of-habeas-corpus standard

A habeas court's decision to grant habeas relief is reviewed for an abuse of discretion. *See Ex parte Wheeler*, 203 S.W.3d 317, 323-24 (Tex.Crim.App. 2006); *Ex parte Aguilar*, No. 08-12-00369-CR, 2014 WL 7234592, at *4 (Tex.App.–El Paso Dec. 19, 2014, no pet.)(not designated for publication). A writ applicant seeking post-conviction habeas-corpus relief on the basis of an involuntary guilty plea must prove his claim by a preponderance of the evidence. *See Kniatt v. State*, 206 S.W.3d. 657, 664 (Tex.Crim.App. 2006). This Court should view the evidence in the light most favorable to the habeas court's ruling and give almost total deference to the habeas court's determination of the historical facts when supported by the record, particularly when the fact findings are based on an evaluation of credibility and demeanor. *See Kniatt*, 206 S.W.3d. at 664; *Ex parte Aguilar*, 2014 WL 7234592, at *4; *Ex parte Torres*, No. 08-10-00330-CR, 2012 WL 1431660, at *2 (Tex.App.–El Paso April 25, 2012, no pet.)(not designated for publication). A habeas court's conclusions of law, however, are reviewed *de novo*, as they do not turn on the habeas court's assessment of credibility or the demeanor of witnesses. *See Ex parte Brown*, 158 S.W.3d 449, 453 (Tex.Crim.App. 2005); *Guzman v. State*, 955 S.W.2d 85, 87 (Tex.Crim.App. 1997). Here, because the trial

19

court decided the habeas-corpus application on solely legal, and not factual, grounds, a *de novo* standard of review applies. *See Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App. 1997)(appellate courts may review *de novo* mixed questions of law and fact that do not turn on an evaluation of credibility and demeanor).

### B. Ineffective-assistance-of-counsel standard

A habeas applicant seeking habeas-corpus relief on the basis of an ineffective-assistance-of-counsel claim must establish: (1) that his counsel's performance was deficient, and (2) he was prejudiced as a result. *See Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Hernandez v. State*, 726 S.W.2d 53, 57 (Tex.Crim.App. 1986); *Ex parte Aguilar*, 2014 WL 7234592, at *4. When a person challenges the validity of the plea entered upon the advice of counsel, contending that his counsel was ineffective, the voluntariness of the plea depends on: (1) whether counsel's advice was within the range of competence demanded of attorneys in criminal cases and if not, (2) whether there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty. *See Ex parte Harrington*, 310 S.W.3d 452, 458 (Tex.Crim.App. 2010). The habeas applicant bears the burden of proving by a preponderance of the evidence that his counsel was ineffective. *See Jackson v.*

20

*State*, 973 S.W.2d 954, 956 (Tex.Crim.App. 1998). Both prongs of *Strickland* must be proven to establish ineffective assistance. *See Perez v. State*, 310 S.W.3d 890, 893 (Tex.Crim.App. 2010); *Ex parte Aguilar*, 2014 WL 7234592, at *4.

To establish deficient performance, an applicant must show that his trial counsel's performance fell below an objective standard of reasonableness based on prevailing professional norms. *See Strickland*, 466 U.S. at 687; *Ex parte Aguilar*, 2014 WL 7234592, at *5. Trial counsel are cloaked with a strong presumption that their actions were reasonably professional and motivated by sound trial strategy. *See Thompson v. State*, 9 S.W.3d 808, 813 (Tex.Crim.App. 1999); *Jackson v. State*, 877 S.W.2d 768, 771 (Tex.Crim.App. 1994). Thus, any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *See McFarland v. State*, 845 S.W.2d 824, 843 (Tex.Crim.App. 1992).

The second prong of *Strickland* requires a habeas applicant to prove that there is a reasonable probability that, but for his counsel's deficient performance, he would have pleaded not guilty and requested a trial. *See Hill v. Lockhart*, 474 U.S. 52, 58-59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985); *Strickland*, 466 U.S. at 687-88. It is not enough for a habeas applicant to baldly state that he would have insisted on going to trial, an applicant must establish that a decision to reject a plea

21

bargain would have been rational under the circumstances. *See Ex parte Aguilar*, 2014 WL 7234592, at \*4, *citing Padilla v. Kentucky*, 559 U.S. 356, 371, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010). This objective test turns on "what a reasonable person in the defendant's shoes would do." *See id.*

In reviewing a claim of ineffective assistance, the habeas court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the claimant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." *See Thompson*, 9 S.W.3d at 813, *citing Strickland*, 466 U.S. at 689. And when the record is silent as to trial counsel's strategy, an appellate court will not conclude that counsel's assistance was ineffective unless the challenged conduct was so outrageous that no competent attorney would have engaged in it. *See Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex.Crim.App. 2005); *Garcia v. State*, 57 S.W.3d 436, 440 (Tex.Crim.App. 2001). In other words, trial counsel should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective, and it is generally the applicant's burden to produce an affidavit or testimony from trial counsel to substantiate his writ allegations. *Goodspeed*, 187 S.W.3d at 392.

22

**II. Aguilar failed his burden of proving that trial counsel was ineffective.**

**A. Trial counsel had no duty to advise Aguilar that deferred-adjudication community-supervision status was considered a "conviction" under Federal law and that this alleged conviction would have an enhancing effect on any potential Federal criminal sentences because these were collateral consequences of his guilty plea.**

As stated above, Aguilar bore the sole burden of rebutting, by a preponderance of the evidence, the strong presumption that trial counsel was effective and of presenting a record demonstrating the reasons behind trial counsel's actions or inaction. *See Thompson*, 9 S.W.3d at 813.

Beyond Aguilar's bare, conclusory allegations, nothing in the record substantiated his claim that trial counsel failed to properly advise him that deferred-adjudication community-supervision status was considered a "conviction" under Federal law and that this alleged conviction would have an enhancing effect on any potential Federal criminal sentences. In his subsequent habeas application, Aguilar failed to produce an affidavit from trial counsel substantiating his ineffective-assistance claims; thus, the record does not contain trial counsel's explanation as to what advice he gave Aguilar about the consequences of his deferred-adjudication guilty plea.

Furthermore, Texas courts have long held that effective assistance of counsel does not extend to collateral aspects of the prosecution. *See Ex parte Morrow*, 952 S.W.2d 530, 536 (Tex.Crim.App. 1997)(en banc)(*overruled in part on other grounds by Taylor v. State*, 109 S.W.3d 443 (Tex.Crim.App. 2003)). A consequence is collateral if it is not a definite, practical consequence of a defendant's guilty plea. *Id*. Courts have characterized the following as collateral consequences of which a defendant need not be advised before his plea is considered knowing and voluntary: possible enhancement of punishment, institution of separate civil proceedings against defendant for commitment to a mental-health facility, loss of good-time credit, possibility of imposition of consecutive sentences, deprivation of rights to vote and to travel abroad, and the possibility of undesirable discharge from the armed forces. *Id*. A consequence is also collateral if its imposition is controlled by an agency that operates beyond the direct authority of the trial judge. *See Ex parte Aguilar*, 2016 WL 921904, at *4.

Importantly, the enhancing effect of a state conviction on a Federal criminal sentence is considered a collateral consequence of a defendant's guilty plea. *See Crawford v. State*, 155 S.W.3d 612, 614 (Tex.App.–San Antonio 2004, pet. ref'd)(the enhancing effect of a state conviction on a Federal sentence is a collateral consequence for purposes of the Sixth Amendment right to effective

assistance of counsel); *see also Ex parte Drinkard*, No. 02-11-00369-CR, 2012 WL 3207428, at \*2 (Tex.App.–Fort Worth Aug. 9, 2012, no pet.)(mem.op., not designated for publication). As such, the fact that Aguilar could face enhanced punishment for any potential future Federal crimes due to his deferred-adjudication guilty plea in 1999 was, at most, a collateral consequence of which trial counsel had no obligation to advise. *See Crawford*, 155 S.W.3d at 614; *Ex parte Drinkard*, WL 3207428, at \*2.

Aguilar's "Felon status in the Federal system of justice," *see* (CR: 153), is likewise a collateral consequence of his guilty plea of which trial counsel also had no obligation to advise. Aguilar's "Felon status" is a collateral consequence because it is controlled by an agency, the Federal government, which operates beyond the direct authority of the state trial judge. *See State v. Jimenez*, 987 S.W.2d 886, 888 n.6 (Tex.Crim.App. 1999); *Ex parte Aguilar*, 2016 WL 921904, at \*4 (both opinions explain that a consequence is collateral if its imposition is controlled by an agency which operates beyond the direct authority of the trial judge).

Here, the record did not affirmatively demonstrate that trial counsel failed to properly advise Aguilar of the consequences of his deferred-adjudication guilty plea, and Aguilar has thus failed his burden of overcoming the strong presumption

25

of effective assistance in this regard. *See Ex parte Aguilar*, 2016 WL 921904, at *5 (holding that the applicant, by failing to subpoena or obtain an affidavit from trial counsel, failed to defeat the strong presumption that the decisions of counsel during trial fell within the wide range of reasonable professional assistance); *Ex parte Wong*, No. 08-08-00003-CR, 2009 WL 3111827, at *2 (Tex.App.–El Paso, Sept. 30, 2009, no pet.)(not designated for publication)(holding that other than the defendant's uncorroborated writ allegations, nothing in the record substantiated the defendant's contentions that counsel behaved in the manner alleged, specifically, the defendant did not obtain an affidavit from trial counsel, and the trial court determined that there was nothing in the habeas-corpus record showing counsel advised the defendant to plead guilty or failed to fully apprise the defendant of the facts and law applicable to the case)*; Ex parte Okere*, 56 S.W.3d 846, 856 (Tex.App.–Fort Worth 2001, pet. ref'd)(holding that the applicant failed to overcome the presumption that trial counsel was effective where the applicant failed to subpoena any of the attorneys involved in the preparation and presentation of his case to testify at his writ hearing, and the record contained no explanation for trial counsel's actions).

Because Aguilar failed to provide evidence, other than his self-serving testimony, in support of his uncorroborated allegations that trial counsel failed to

properly advise him of the Federal criminal enhancement consequences of his guilty plea or that his deferred-adjudication guilty plea was considered a conviction by the Federal government, and because trial counsel had no duty to advise Aguilar of such collateral consequences, Aguilar failed his burden of proving any deficient performance by trial counsel at his habeas hearing. *See, e.g., Rylander v. State*, 101 S.W.3d 107, 110 (Tex.Crim.App. 2003)(holding that the failure to make the required showing of either deficient performance (first prong) or sufficient prejudice (second prong) defeats the ineffective-assistance claim).

**B.** **Aguilar was not prejudiced by trial counsel's alleged failure to advise him of the consequences of his deferred-adjudication guilty plea because his decision to reject the plea offer would not have been rational under the circumstances.**

Aguilar was not prejudiced by trial counsel's alleged failure to advise him that deferred-adjudication-probation status was considered a conviction under Federal law and that this alleged conviction would have an enhancing effect on any potential future Federal criminal sentences because, as discussed below, his decision to reject the plea offer would not have been rational under the circumstances.

In order to obtain relief on a claim that an applicant's guilty plea was rendered involuntary as a result of ineffective assistance of counsel, it is not

enough for an applicant to baldly assert that he would have insisted on going to trial; an applicant must convince the court that a decision to reject the plea bargain would have been rational under the circumstances. *See Padilla*, 559 U.S. at 372, *citing Roe v. Flores-Ortega*, 528 U.S. 470, 480, 486, 120 S.Ct. 1029, 1036, 1039, 145 L.Ed.2d 985 (2000). And the United States Supreme Court has explained that such an inquiry must be made objectively, without regard for the idiosyncrasies of the particular decision-maker. *See Hill*, 474 U.S. at 59-60. In other words, an assessment of the likelihood of a result more favorable to the defendant must exclude the possibility of arbitrariness, whimsy, caprice, "nullification," and the like. *See Strickland*, 466 U.S. at 695.

Factors to consider in determining whether a decision to reject a plea bargain would have been rational under the circumstances are: (1) the strength of the State's case or evidence of the applicant's guilt, (2) whether the applicant had any legal or factual defenses, (3) whether the applicant presented evidence indicating that the immigration consequences of his plea were his "paramount concern," and (4) the circumstances of the plea agreement compared to what the applicant risked by going to trial. *See Ex parte Torres,* 483 S.W.3d 35, 48 (Tex.Crim.App. 2016); *Ex parte Murillo*, 389 S.W.3d 922, 928-31 (Tex.App.–Houston [14th Dist.] 2013, no pet.), *abrogated on other grounds by Ex*

*parte De Los Reyes*, 392 S.W.3d 675 (Tex.Crim.App. 2013). Although the inquiry is not whether the applicant would have received a more favorable disposition at trial, the habeas court can properly consider evidence concerning the likelihood of success at trial when determining whether it would have been rational to reject the plea bargain. *See Ex parte Murillo*, 389 S.W.3d at 930.

During the habeas proceedings, the State presented evidence demonstrating that it had a strong case. In complaint and offense reports, Ofc. Rodriguez related that while on patrol on May 3, 1997, he saw two individuals, later identified as Aguilar and Ricardo Marmolejo, sitting on a park bench and that as he passed by, he saw Marmolejo pick an item up from the park table and "...bend[] down..." to prevent Ofc. Rodriguez from seeing that he was concealing something in his right-front pants pocket. *See* (CR: 34-36). Because of Marmolejo's suspicious behavior, Ofc. Rodriguez stopped his patrol unit and approached both Aguilar and Marmolejo to ask them to produce identification. *Id.* As he approached, Ofc. Rodriguez smelled a strong odor of marijuana emanating from the breath and person of both Aguilar and Marmolejo, and he then asked Marmolejo whether he had any narcotics, and Marmolejo answered that he had marijuana inside his right-front pants pocket. *Id.* After seizing Marmolejo's marijuana, Ofc. Rodriguez approached Aguilar as he was pulling his wallet out of his pocket and observed a

small piece of white paper drop to the ground. *Id*. Ofc. Rodriguez picked up the piece of paper, and after noticing its "diamond fold," he unfolded the piece of paper to find a white powdery substance that he believed was cocaine and placed Aguilar under arrest. *Id*. Lab reports showed that the white powdery substance in the diamond-folded piece of paper tested positive for cocaine. *See* (CR: 37).

Aguilar did not otherwise allege or demonstrate that he had a viable defense to raise at trial. And, as this Court noted in its previous opinion, Aguilar at the habeas hearing on his initial writ failed to show that a motion to suppress would have been granted and that the remaining evidence would have been insufficient to support his conviction. *See Ex parte Aguilar*, 2016 WL 921904, at *5. Moreover, the record contained scant, if any, evidence showing that Aguilar informed trial counsel or anyone else, including the trial court, that any Federal-law consequences (that his deferred-adjudication guilty plea was considered a conviction under Federal law and/or could enhance any potential Federal criminal sentences) were his primary concern when he pleaded guilty to the charged offense.

Further, Aguilar benefitted substantially from his plea agreement. Aguilar, charged with a state-jail felony for possession of cocaine, was facing a punishment range of 180 days' to 2 years' confinement and up to a $10,000 fine. *See* TEX.

PENAL CODE § 12.35. And under the law in effect in 1999, the law did not provide for mandatory probation for a state-jail-felony possession-of-cocaine conviction. *See* TEX. CRIM. PROC. CODE Art. 42.12 § 15(a) (1998) ("On conviction of a state jail felony punished under Section 12.35(a), Penal Code, the judge *may* suspend the imposition of the sentence and place the defendant on community supervision or may order the sentence to be executed.")(emphasis added). Instead, the State agreed to reduce the charged felony offense to a Class-A misdemeanor, and Aguilar received 2 years' deferred-adjudication community supervision and was discharged from probation early, after only 8 months. *See* (CR: 53).

Where the State's evidence was strong, Aguilar failed to articulate any viable defenses, the record did not show that Federal-law consequences were Aguilar's paramount concern when he pleaded guilty, and he benefitted substantially from his plea agreement, Aguilar failed to demonstrate that a decision to reject the plea bargain and insist on a trial would have been rational under the circumstances. *See, e.g., Ex parte Torres,* 483 S.W.3d at 48; *Ex parte Murillo*, 389 S.W.3d at 932. For these reasons, the habeas court's order granting Aguilar's habeas relief and setting aside Aguilar's "conviction" should be reversed.

**POINT OF ERROR FIVE: Aguilar failed his burden of proving his habeas claim that his trial counsel rendered ineffective assistance of counsel by allegedly failing to adequately inform him of the immigration consequences of his guilty plea because trial counsel was not required to advise him of such collateral consequences at the time of his plea, and thus, the habeas court abused its discretion to the extent that it granted Aguilar habeas-corpus relief on this basis.**

## UNDERLYING FACTS

The State here relies on the recitation of facts set out in the statement of facts above.

## ARGUMENT AND AUTHORITIES

The trial court abused its discretion in granting habeas relief on the grounds that trial counsel was ineffective for failing to advise Aguilar of the immigration consequences of his guilty plea, because this Court has previously ruled against Aguilar on this issue because trial counsel had no duty to advise Aguilar of immigration consequences in 1999 and because Aguilar was not prejudiced by his trial counsel's alleged failure to advise.[7]

---

[7] *See Ex parte Aguilar*, 2016 WL 921904, at *4 (holding that because the applicant failed to meet the deficient performance prong of *Strickland,* the trial court abused its discretion in finding trial counsel ineffective). And because this issue has been previously decided by this Court, Aguilar is foreclosed from relitigating it again. *See Ex parte Young*, 2008 WL 2967008, at *2 (under the law-of-the-case doctrine, an appellate court's resolution of a question of law in a previous appeal of the same case will govern the disposition of the same issue when raised in a subsequent appeal).

# I. Standards of Review

The State incorporates herein and relies upon the standards of review presented in its Point of Error Four.

# II. Aguilar failed his burden of proving that trial counsel was ineffective.

## A. Trial counsel had no duty to advise Aguilar of the immigration consequences of his deferred-adjudication guilty plea.

To the extent that this Court considers Aguilar's subsequent-writ claim that he would not have pleaded guilty if he had known that this would make him subject to deportation and denial of naturalization as equating to the fact that he was not advised of the immigration consequences of his guilty plea on the merits, *Padilla v. Kentucky*, 559 U.S. 356, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010), does not retroactively apply to Aguilar's case. *See Chaidez v. United States*, 568 U.S. 342, 133 S. Ct. 1103, 185 L. Ed. 2d 149 (2013)(holding that *Padilla v. Kentucky* announced a new rule of constitutional criminal procedure, such that defendants whose convictions became final prior to *Padilla* could not benefit from its holding); *see also Ex parte Aguilar*, 2016 WL 921904, at *4 (holding that trial counsel had no duty to inform applicant of the immigration consequences of his guilty plea because at the time of the plea, such a consequence was considered a collateral consequence, and that the habeas court erred in finding that trial counsel

33

rendered ineffective assistance of counsel when he did not advise applicant of the possibility of deportation).

The Court of Criminal Appeals has likewise held that *Padilla* was a new rule of criminal procedure that did not apply to cases already final on direct review. *See Ex parte De Los Reyes*, 392 S.W.3d 675, 679 (Tex.Crim.App. 2013); *see also State v. Guerrero*, 400 S.W.3d 576, 587 (Tex.Crim.App. 2013). And recognizing the holdings in *Chaidez* and *Ex parte De Los Reyes*, this Court has also held that since *Padilla* announced a new rule, it did not retroactively apply to the collateral review of a state conviction that was final when *Padilla* was decided. *See Ex parte Nieves*, No. 08-11-00189-CR, 2013 WL 3943288, at *10 (Tex.App.–El Paso July 24, 2013, no pet.)(not designated for publication); *Ex parte Cisneros*, No. 08-11-00180-CR, 2013 WL 1281995, at *8 (Tex.App.–El Paso Mar. 28, 2013, no pet.)(not designated for publication).

In this case, Aguilar pleaded guilty to the charged possession-of-cocaine offense on January 15, 1999, and the trial court placed him on two years' deferred-adjudication community supervision. For purposes of *Padilla*, Aguilar's case was final on January 15, 1999. *See Ex parte Nieves*, 2013 WL 3943288, at *10, *citing Guerrero*, 400 S.W.3d at 588. Because Aguilar's case was final at the time *Padilla* was decided, Aguilar cannot benefit from a retroactive application of

34

*Padilla*, no matter how he attempted to recharacterize the issue, and the trial court's order granting relief, to the extent it was on the basis of *Padilla*, should be reversed for this reason alone. *See, e.g., Guerrero*, 400 S.W.3d at 588; *Ex parte De Los Reyes*, 392 S.W.3d at 679; *Ex parte Nieves*, 2013 WL 3943288, at *10; *Ex parte Cisneros*, 2013 WL 1281995, at *8.

**B.     Aguilar failed his burden of proving that trial counsel rendered deficient performance by allegedly failing to advise him of the immigration consequences of his deferred-adjudication guilty plea.**

Aguilar bore the sole burden of rebutting, by a preponderance of the evidence, the strong presumption that trial counsel was effective and of presenting a record demonstrating the reasons behind trial counsel's actions or inaction. *See Thompson*, 9 S.W.3d at 813. The United States Supreme Court recognized such a presumption of effective assistance in the context of *Padilla*: "We should, therefore, presume that counsel satisfied their obligation to render competent advice at the time their clients considered pleading guilty." *See Padilla*, 559 U.S. at 372.

Trial counsel should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective, and it is generally the applicant's burden to produce an affidavit or testimony from trial counsel to substantiate his

35

writ allegations. *See, e.g., Goodspeed*, 187 S.W.3d at 392; *Rylander*, 101 S.W.3d at 111; *Sandoval v. State*, Nos. 14-01-00049-CR, 14-01-00050-CR, 14-01-00051-CR, 2002 WL 533711, at *4 (Tex.App.–Houston [14th Dist.] Apr. 11, 2002, pet. ref'd)(not designated for publication)(noting the defendant's failure to subpoena his trial counsel to his motion-for-new-trial hearing, rejecting the defendant's erroneous argument that the burden was on the State to secure the defendant's trial counsel's appearance at his hearing and that the State's failure to do so should result in an adverse inference, and reiterating that the burden was on the defendant to rebut, by a preponderance of the evidence, the presumption that trial counsel was effective).

Beyond Aguilar's bare, conclusory allegations, nothing in the record substantiated his allegation that trial counsel failed to properly advise him of the immigration consequences of his guilty plea. Aguilar failed to produce an affidavit from trial counsel substantiating his ineffective-assistance claim; thus, the habeas record did not contain trial counsel's explanation as to what advice he gave Aguilar about his guilty plea.

Accordingly, the record did not affirmatively demonstrate that trial counsel failed to properly advise Aguilar of the immigration consequences of his guilty plea, such that Aguilar failed his burden of overcoming the strong presumption of

effective assistance in this regard. *See Ex parte Okere*, 56 S.W.3d at 856 (holding that the applicant failed to overcome the presumption that trial counsel was effective where the applicant failed to subpoena any of the attorneys involved in the preparation and presentation of his case to testify at his writ hearing, and the record contained no explanation for trial counsel's actions); *Ex parte Wong*, 2009 WL 3111827, at *2 (holding that other than the defendant's uncorroborated writ allegations, nothing in the record substantiated the defendant's contentions that counsel behaved in the manner alleged, specifically, the defendant did not obtain an affidavit from trial counsel, and the trial court determined that there was nothing in the habeas-corpus record showing counsel advised the defendant to plead guilty or failed to fully apprise the defendant of the facts and law applicable to the case).

Because Aguilar failed to provide evidence, other than his self-serving testimony, in support of his uncorroborated allegations that trial counsel failed to properly advise him of the immigration consequences of his guilty plea, he failed his burden of proving any deficient performance by trial counsel at his habeas hearing, *see, e.g., Rylander*, 101 S.W.3d at 110, and the trial court's order, to the extent it granted relief on this basis, should be reversed for this reason as well.

**C. Aguilar failed his burden of proving that he was prejudiced by any deficient performance of trial counsel in failing to advise him of the immigration consequences of his deferred-adjudication guilty plea.**

In the context of *Padilla*, an applicant must show not only that trial counsel was required, but failed, to give proper advice concerning the immigration consequences of pleading guilty, he must also specifically aver and affirmatively prove, by credible evidence, that had he been aware that his guilty plea carried the risk of deportation, he would have pleaded not guilty and insisted on going to trial. *See Padilla*, 559 U.S. at 374; *Hill*, 474 U.S. at 59-60; *Ex parte Torres,* 483 S.W.3d at 48; *Ex parte Harrington*, 310 S.W.3d at 458. As the United States Supreme Court noted in *Padilla*, "it is often quite difficult for petitioners who have acknowledged their guilt to satisfy Strickland's prejudice prong." *See Padilla*, 559 U.S. at 371 n.12.

Furthermore, in order to obtain relief on a claim that an applicant's guilty plea was rendered involuntary as a result of ineffective assistance of counsel, it is not enough to baldly assert that he would have insisted on going to trial; an applicant must convince the court that a decision to reject the plea bargain would have been rational under the circumstances. *See Padilla*, 559 U.S. at 372, *citing Roe v. Flores-Ortega*, 528 U.S. at 480, 486. And the United States Supreme Court

38

has explained that such an inquiry must be made objectively, without regard for the idiosyncrasies of the particular decision-maker. *See Hill*, 474 U.S. at 59-60. In other words, an assessment of the likelihood of a result more favorable to the defendant must exclude the possibility of arbitrariness, whimsy, caprice, "nullification," and the like. *See Strickland*, 466 U.S. at 695.

Factors to consider in determining whether a decision to reject a plea bargain would have been rational under the circumstances are: (1) the strength of the State's case or evidence of the applicant's guilt, (2) whether the applicant had any legal or factual defenses, (3) whether the applicant presented evidence indicating that the immigration consequences of his plea were his "paramount concern," and (4) the circumstances of the plea agreement compared to what the applicant risked by going to trial. *See Ex parte Torres,* 483 S.W.3d at 48*; Ex parte Murillo*, 389 S.W.3d at 928-31, *abrogated on other grounds by Ex parte De Los Reyes*, 392 S.W.3d 675 (Tex.Crim.App. 2013). Although the inquiry is not whether the applicant would have received a more favorable disposition at trial, the habeas court can properly consider evidence concerning the likelihood of success at trial when determining whether it would have been rational to reject the plea bargain. *See Ex parte Murillo*, 389 S.W.3d at 930.

During the habeas proceedings, the State presented evidence demonstrating that it had a strong case. In complaint and offense reports, Ofc. Rodriguez related that while on patrol on May 3, 1997, he saw two individuals, later identified as Aguilar and Ricardo Marmolejo, sitting on a park bench and that as he passed by, he saw Marmolejo pick an item up from the park table and "...bend[] down..." to prevent Ofc. Rodriguez from seeing that he was concealing something in his right-front pants pocket. *See* (CR: 34-36). Because of Marmolejo's suspicious behavior, Ofc. Rodriguez stopped his patrol unit and approached both Aguilar and Marmolejo to ask them to produce identification. *Id.* As he approached, Ofc. Rodriguez smelled a strong odor of marijuana emanating from the breath and person of both Aguilar and Marmolejo, and he then asked Marmolejo whether he had any narcotics, and Marmolejo answered that he had marijuana inside his right-front pants pocket. *Id.* After seizing Marmolejo's marijuana, Ofc. Rodriguez approached Aguilar as he was pulling his wallet out of his pocket and observed a small piece of white paper drop to the ground. *Id.* Ofc. Rodriguez picked up the piece of paper, and after noticing its "diamond fold," he unfolded the piece of paper to find a white powdery substance that he believed was cocaine and placed Aguilar under arrest. *Id.* Lab reports showed that the white powdery substance in the diamond-folded piece of paper tested positive for cocaine. *See* (CR: 37).

40

Aguilar did not otherwise allege or demonstrate that he had a viable defense to raise at trial. And, as this Court noted in its previous opinion, Aguilar at the habeas hearing on his initial writ failed to show that a motion to suppress would have been granted and that the remaining evidence would have been insufficient to support his conviction. *See Ex parte Aguilar*, 2016 WL 921904, at *5. Moreover, the record contained scant, if any, evidence showing that Aguilar informed trial counsel or anyone else, including the trial court, that immigration consequences were his primary concern when he pleaded guilty to the charged offense.

Further, Aguilar benefitted substantially from his plea agreement. Aguilar, charged with a state-jail felony for possession of cocaine, was facing a punishment range of 180 days' to 2 years' confinement and up to a $10,000 fine. *See* TEX. PENAL CODE § 12.35. And under the law in effect in 1999, the law did not provide for mandatory probation for a state-jail-felony possession-of-cocaine conviction. *See* TEX. CRIM. PROC. CODE Art. 42.12 § 15(a) (1998) ("On conviction of a state jail felony punished under Section 12.35(a), Penal Code, the judge *may* suspend the imposition of the sentence and place the defendant on community supervision or may order the sentence to be executed.")(emphasis added). Instead, the State agreed to reduce the charged felony offense to a Class-A misdemeanor, and Aguilar received 2 years' deferred-adjudication community supervision and was

41

discharged from probation early, after only 8 months. *See* (CR: 53).

Where the State's evidence was strong, Aguilar failed to articulate any viable defenses, the record did not show that immigration consequences were Aguilar's paramount concern when he pleaded guilty, and he benefitted substantially from his plea agreement, Aguilar failed to demonstrate that a decision to reject the plea bargain and insist on a trial would have been rational under the circumstances. *See, e.g., Ex parte Torres,* 483 S.W.3d at 48; *Ex parte Murillo*, 389 S.W.3d at 932. For these reasons, the habeas court's order granting Aguilar's habeas relief and setting aside Aguilar's "conviction" should be reversed.

# PRAYER

WHEREFORE, the State prays that the habeas court's order granting

Aguilar's habeas relief and setting aside Aguilar's conviction be reversed.

Respectfully submitted,

JAIME ESPARZA
DISTRICT ATTORNEY
34th JUDICIAL DISTRICT


/s/ Ronald Banerji
RONALD BANERJI
ASST. DISTRICT ATTORNEY
DISTRICT ATTORNEY'S OFFICE
EL PASO COUNTY COURTHOUSE
500 E. SAN ANTONIO
EL PASO, TEXAS 79901
(915) 546-2059 ext. 3312
FAX (915) 533-5520
E-MAIL: rbanerji@epcounty.com
SBN 24076257

ATTORNEYS FOR THE STATE

43

## CERTIFICATE OF COMPLIANCE

The undersigned does hereby certify that the foregoing document, beginning with the statement of facts on page 1 through and including the prayer for relief on page 43, contains 8,968 words, as indicated by the word-count function of the computer program used to prepare it.

/s/ Ronald Banerji
RONALD BANERJI

## CERTIFICATE OF SERVICE

The undersigned does hereby certify that a copy of the above brief was sent by e-mail by utilizing the E-serve system on May 29, 2018, to appellant's attorney: Matthew DeKoatz, mateodekoatz@yahoo.com.

/s/ Ronald Banerji
RONALD BANERJI